# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

VINCENT DIBENEDETTO, individually and on behalf of all others similarly situated,

        Plaintiff,

-against-

BOARDWALK 1000, LLC (d/b/a Hard Rock Hotel & Casino Atlantic City),

        Defendant.

Case No. 22-cv-06759

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT OR IN THE ALTERNATIVE, TRANSFER VENUE TO THE DISTRICT OF NEW JERSEY, BY DEFENDANT BOARDWALK 1000, LLC (D/B/A HARD ROCK HOTEL & CASINO ATLANTIC CITY)

---

**FOX ROTHSCHILD LLP**
Eileen Oakes Muskett, Esquire
1301 Atlantic Avenue
Midtown Building, Suite 401
Atlantic City, NJ 08401
Phone: (609) 348-4515
Fax: (609) 348-6834
emuskett@foxrothschild.com
*Attorneys for Defendant Boardwalk 1000, LLC (d/b/a Hard Rock Hotel & Casino Atlantic City)*

145169909.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

STATEMENT OF FACTS ...........................................................................................................2

LEGAL ARGUMENT ...................................................................................................................4

    I.      FED. R. CIV. P. 12(B)(1) REQUIRES DISMISSAL BECAUSE THE COURT LACKS SUBJECT-MATTER JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT..............................................................................................4

    II.     FED. R. CIV. P. 12(B)(2) REQUIRES DISMISSAL BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER BOARDWALK 1000 ......................6

          A.     The Court Does Not Have General Jurisdiction over Boardwalk 1000 Pursuant to CPLR § 301 ....................................................................6

          B.     The Court Does Not Have Specific Jurisdiction over Boardwalk 1000 Pursuant to CPLR § 302 ....................................................................8

               1.     Plaintiff's Claims Do Not Arise From Boardwalk 1000's Transactions with New York ........................................................9

               2.     Boardwalk 1000 Did Not Commit a Tortious Act Outside New York That Resulted in Injury to Plaintiff in New York.............................10

          C.     The Eastern District of New York Cannot Exercise Personal Jurisdiction Over Boardwalk 1000 Consistent with the Due Process Clause.......................................................................................................11

               1.     Boardwalk 1000 Lacks Minimum Contacts with New York .............11

               2.     Exercise of Personal Jurisdiction over Boardwalk 1000 Offends Traditional Notions of Fair Play and Substantial Justice...................13

    III.    FED R. CIV. P. 12(B)(6) REQUIRES DISMISSAL OF PLAINTIFF'S NEW YORK AND FLORIDA CONSUMER FRAUD CLAIMS. ...................................14

    IV.   FED. R. CIV. P. 12(B)(3) REQUIRES DISMISSAL BECAUSE VENUE IS IMPROPER ................................................................................................16

          A.     The Relevant Claims are Consumer Fraud, Breach of Contract, Conversion, and Unjust Enrichment Stemming from Boardwalk 1000's Use of Coinless Kiosks at its Atlantic City Casino ...........................18

          B.     None of the Acts or Omissions Giving Rise to Plaintiff's Claims Occurred in the Eastern District of New York..................................18

    V.     THE COURT SHOULD TRANSFER VENUE TO THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1404(A)................................................19

          A.     The Action Could Have Been Brought in the District of New Jersey...........19

          B.     Transfer to the District of New Jersey Would Promote Convenience and be in the Interest of Justice..........................................................20

1.  Plaintiff's Choice of Forum Should be Given Little Weight Because the Operative Facts have Little or No Connection with the Eastern District of New York.............................................................................20

2.  The Convenience of Witnesses Favors Transfer to the District of New Jersey................................................................................................21

3.  A Majority of Documents are Located in the District of New Jersey .....................................................................................................................22

4.  Boardwalk 1000's Inconvenience Could Be Completely Eliminated by Transfer ................................................................................................23

5.  The Operative Facts Occurred in New Jersey ......................................23

6.  The Process to Compel Attendance of Unwilling Witnesses Favors Transfer to the District of New Jersey....................................................24

7.  Plaintiff's Financial Ability to Continue to Litigate this Class Action will not be Impacted by a Transfer to the District of New Jersey.....24

8.  The District of New Jersey has a Greater Familiarity with the Governing Law ........................................................................................25

CONCLUSION....................................................................................................25

145169909.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
    860 F. Supp. 128 (S.D.N.Y. 1994) ................................................................................24

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*,
    457 F. Supp. 2d 474 (S.D.N.Y. 2006) ..........................................................................25

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999) ........................................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................................14

*Best Van Lines Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007) ..........................................................................................9

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
    582 U.S. 255 (2017) ............................................................................................. 11, 13

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................. 11, 13

*BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*,
    69 F. Supp. 3d 342 (S.D.N.Y. 2014) ..............................................................................7

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ........................................................................................14

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) ..........................................................................................6

*Citibank, N.A. v. Intercontinental Bank*,
    646 N.Y.S.2d 261 (1996) .............................................................................................12

*Cobra Partners L.P. v. Liegl*,
    990 F. Supp. 332 (S.D.N.Y. 1998) ..............................................................................21

*Cold Spring Harbor Lab. v. Ropes & Gray LLP*,
    762 F. Supp. 2d 543 (E.D.N.Y. 2011) .................................................................. 17, 18

*Cont'l Ins. Co. v. Securi Enters., Inc.*,
    No. 09-CV-3731, 2010 WL 3702559 (E.D.N.Y. Aug. 16, 2010) ...................................17

145169909.1

*Curley v. AMR Corp.,*
    153 F.3d 5 (2d Cir. 1998) ...............................................................................................15

*D.H. Blair & Co., Inc. v. Gottdiener,*
    462 F.3d 95 (2d Cir. 2006) ....................................................................................... 20, 25

*Daniel v. Am. Bd. of Emergency Med.,*
    428 F.3d 408 (2d Cir. 2005) ...........................................................................................17

*Dell v. Preferred Life Assurance Soc.,*
    320 U.S. 238 (1943) ..........................................................................................................4

*Distefano v. Carozzi N. Am., Inc.,*
    No. 98 Civ. 7137(SJ), 2002 WL 31640476 (E.D.N.Y. Nov. 16, 2002)..........................22

*EasyWeb Innovations, LLC v. Facebook, Inc.,*
    888 F. Supp. 2d 342 (E.D.N.Y. 2012).........................................................19, 20, 23, 24

*Gabelli v. S.E.C.,*
    568 U.S. 442 (2013) ........................................................................................................18

*Glass v. S & M NuTec,*
    456 F. Supp. 2d 498 (S.D.N.Y. 2006)............................................................................20

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.,*
    449 F.3d 377 (2d Cir. 2006) ...........................................................................................15

*In re Grand Theft Auto Video Game Consumer Litig.,*
    251 F.R.D. 139 (S.D.N.Y. 2008) ....................................................................................15

*Gulf Ins. Co. v. Glassbrenner,*
    417 F.3d 353 (2d Cir. 2005) ..................................................................................... 17, 18

*Haidon v. Budlong & Budlong, LLC,*
    318 F. Supp. 3d 568 (W.D.N.Y. 2018)............................................................................7

*Helicopteros Nationals de Colombia v. Hall,*
    466 U.S. 408 (1984) ..........................................................................................................7

*Hermann v. Sharon Hosp., Inc.,*
    135 A.D.2d 682 (N.Y. 2d Dep't 1987)..................................................................... 10, 11

*Hernandez v. Graebel Van Lines, Inc.,*
    761 F. Supp. 983 (E.D.N.Y. 1991) ................................................................................20

*Holborn Corp. v. Sawgrass Mutual Ins. Co.,*
    304 F. Supp. 3d 392 (S.D.N.Y. 2018).............................................................................14

iv

*Holey Soles Holdings, Ltd. v. Foam Creations, Inc.,*
  2006 WL 1147963 (S.D.N.Y. May 1, 2006)...................................................................7, 12

*Imagine Solutions, LLC v. Medical Software Computer Systems, Inc.,*
  No. 06-cv-3793, 2007 WL 1888309 (E.D.N.Y. June 28, 2007) ...........................................7

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945)............................................................................................................7, 11

*Jones v. Walgreens Co.,*
  463 F. Supp. 2d 267 (D. Conn. 2006) .................................................................................24

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
  313 U.S. 487 (1941).............................................................................................................14

*Knight v. City of Margate,*
  86 N.J. 374, 431 A.2d 833 (1981).......................................................................................13

*Landoil Res. Corp. v. Alexander & Alexander Servs.,*
  565 N.E.2d 488 (N.Y. 1990).................................................................................................7

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
  732 F.3d 161 (2d Cir. 2013).................................................................................................6

*Martinez v. Am. Standard,*
  457 N.Y.S.2d 97 (1982) ......................................................................................................12

*Neil Bros. Ltd. v. World Wide Lines, Inc.,*
  425 F. Supp. 2d 325 (E.D.N.Y. 2006)..................................................................................21

*Pierce v. Coughlin,*
  806 F. Supp. 426 (S.D.N.Y. 1992) ......................................................................................21

*Robles v. Cox and Co.,*
  841 F. Supp. 2d 615 (E.D.N.Y. 2012)...................................................................................2

*Scherer v. Equitable Life Assurance Soc'y of U.S.,*
  347 F.3d 394 (2d Cir. 2003) ..................................................................................................4

*Scherillo v. Dun & Bradstreet, Inc.,*
  684 F. Supp. 2d 313 (E.D.N.Y. 2010)..................................................................................23

*Sonera Holding B.V. v. Cukurova Holding A.S.,*
  750 F.3d 221 (2d Cir. 2014) ..................................................................................................7

*State Farm Fire & Cas. Co. v. Tashire,*
  386 U.S. 523 (1967)................................................................................................................4

v

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)......................................................................................................12

**Statutes**

28 U.S.C. § 1391(b).............................................................................................................16

28 U.S.C. § 1391(b)(1)........................................................................................................19

28 U.S.C. § 1391(b)(2)........................................................................................................17

28 U.S.C. § 1391(b)(2): (1).................................................................................................17

28 U.S.C. § 1404(a).......................................................................................................1, 19

28 U.S.C. § 1406(a)............................................................................................................19

Casino Control Act..............................................................................................................13

Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)......................................................4, 24

N.J.S.A. 5:12-141.2(b)..........................................................................................................5

N.J.S.A. 56:8-1 *et. seq.*............................................................................................2, 16, 25

N.J.S.A. § 5:12-141.2(a) and (b)..........................................................................................5

New Jersey, New Jersey's Consumer Fraud Act...................................................................2

New York's Civil Practice Law Section 301 and 302...........................................................6

**Other Authorities**

CPLR § 301.......................................................................................................................6, 8

CPLR § 302.......................................................................................................................6, 8

CPLR § 302(a)......................................................................................................................8

CPLR § 302(a)(1)..................................................................................................................9

CPLR § 302(a)(3)...........................................................................................................10, 11

Fed. R. Civ. P. Rule 12(b)(1)...........................................................................................1, 4

Fed. R. Civ. P. Rule 12(b)(2)...........................................................................................1, 6

Fed. R. Civ. P. Rule 12(b)(3)...................................................................................1, 16, 19

Fed R. Civ. P. 12(B)(6).......................................................................................................14

Fed. R. Civ. P. 45 ................................................................................................24

Fed. R. Civ. P. 45(b)(2) ........................................................................................24

Fed. R. Civ. P. 45(c)(3)(A)(ii) ..............................................................................24

Fed. R. Evid. 201(b)(2) .........................................................................................24

N.J.A.C. § 13:69C-7.3 ...........................................................................................14

U.S. Const., Art. III, § 2 ..........................................................................................4

United States Constitution Fourteenth Amendment Due Process Clause ........................................2, 11

145169909.1

<u>**PRELIMINARY STATEMENT**</u>

Defendant Boardwalk 1000, LLC (d/b/a Hard Rock Hotel & Casino Atlantic City) ("Boardwalk 1000") submits this memorandum of law in support of its Motion to Dismiss Plaintiff Vincent DiBenedetto's, individually and on behalf of all others similarly situated ("Plaintiff") Complaint, dated November 5, 2022 (the "Complaint"), pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(3) of the Federal Rules of Civil Procedure ("FRCP"), or in the alternative, Transfer Venue to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

Plaintiff brings the Complaint on behalf of himself, and all others similarly situated for alleged damages arising from Boardwalk 1000's use of gaming voucher kiosks that only dispense whole dollar amounts. The Court should dismiss all of Plaintiff's claims against Boardwalk 1000 for several reasons.

First, the Court lacks subject matter jurisdiction over Boardwalk 1000 under the Class Action Fairness Act. Although Plaintiff has pled that the aggregate amount in controversy exceeds $5 million, Plaintiff has made a grave miscalculation. Boardwalk 1000 has retained, at most, $434,002.99 worth of expired gaming obligations at the time the Complaint was filed. Even taking into account statutory damages, punitive damages, and attorneys' fees, it is difficult, if not impossible, to imagine that Plaintiff could recover $5 million.

Second, this Court lacks personal jurisdiction over Boardwalk 1000. Boardwalk 1000 is a citizen of New Jersey with little to no contacts with New York. Boardwalk 1000 has no employees, properties, or assets in New York. Additionally, Plaintiff's claims against Boardwalk 1000 arise out of Plaintiff's visit to Boardwalk 1000's casino in Atlantic City, New Jersey, and bear no connection to any possible contacts that Boardwalk 1000 might have with New York. Simply stated, Boardwalk 1000 lacks "minimum contacts" with New York such that exercising personal jurisdiction over it

would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Third, the Court must dismiss Plaintiff's Florida and New York Consumer Fraud claims because New Jersey's Consumer Fraud statute, *N.J.S.A.* 56:8-1 *et. seq.*, governs Plaintiff's consumer fraud claims. Under New York's choice of law rules, the proper state law is the state with the greatest interest in the claims, determined by finding the state where the injury occurred. Because Plaintiff was allegedly injured while visiting Boardwalk 1000's casino in New Jersey, New Jersey's Consumer Fraud Act, rather than Florida or New York's consumer fraud statutes, should apply to this action.

Fourth, the Eastern District of New York is an improper venue for this action. Boardwalk 1000 does not reside in New York, and no "substantial event or omission giving rise to the claim" occurred in New York. Instead, nearly all (if not all) of the material events to Plaintiff's claims occurred in New Jersey. As such, the Court should dismiss the Complaint for improper venue.

Fifth, as an alternative to dismissal for improper venue, the Court should transfer venue to the District of New Jersey because the action could have been originally brought in New Jersey, and the interests of justice and convenience of the parties demand that the action be transferred to New Jersey.

**STATEMENT OF FACTS[1]**

Boardwalk 1000 operates and manages the Hard Rock Hotel and Casino in Atlantic City, New Jersey. Compl., ¶ 1. Visitors frequent Boardwalk 1000's casino to enjoy playing a game of chance. *Id.*, ¶ 5. To participate, a player can insert cash into the slots and electronic table games. *Id.*, ¶ 6. After concluding a gaming session, the player will "cash out" any unused credits on the machine

---

[1] We glean these facts from the Complaint, which this Court must accept as true for purposes of this Motion. *Robles v. Cox and Co.*, 841 F. Supp. 2d 615, 626 (E.D.N.Y. 2012).

and receive a voucher that may be redeemed at a voucher redemption kiosk or casino cage positioned throughout the casino. *Id.*, ¶¶ 7-8, 15.

Some voucher redemption kiosks only pay out whole dollar amounts (the "Coinless Kiosks"). *Id.*, ¶ 10. If a person with a voucher that includes a coin amount utilizes a Coinless Kiosk, instead of paying out the full balance, the player receives from such Coinless Kiosk a cash payment for any whole dollar amount specified on the voucher and another "cash out" ticket (a "Coin Voucher") in lieu of dispensing coins. *Id.*, ¶ 13. Plaintiff alleges that "[n]o signage is available anywhere in the casino informing players on where to cash the remaining balance." Compl., ¶ 12. Plaintiff theorizes that "most of these [Coin Vouchers] are never redeemed" because "[m]any players are unsure of where to redeem their vouchers, and the ones who are decide it is inconvenient to wait in a line for over forty minutes to obtain the change they are entitled to." Compl., ¶¶ 14-15. As a result, "players like Plaintiff discard their vouchers or even toss them into a fountain." *Id.*, ¶ 16.

Plaintiff visited Boardwalk 1000 between June and October 2022. *Id.*, ¶ 30. Plaintiff cashed out his voucher at a Coinless Kiosk, but the kiosk only returned the whole dollar amount, plus a Coin Voucher for the coin amount. *Id.*, ¶¶ 32-24. Instead of cashing out the Coin Voucher, Plaintiff either inserted the Coin Voucher into other slot machines or discarded it "because of the time, inconvenience, and obstacles to redeeming [it]." *Id.*, ¶ 34. Plaintiff alleges that Boardwalk 1000's use of Coinless Kiosks is a violation of several state consumer fraud statutes. *Id.*, ¶ 52. Plaintiff further alleges that Boardwalk 1000 is liable for breach of contract, conversion, and unjust enrichment. Compl., ¶¶ 55, 63, 65.

Plaintiff brings this Complaint on behalf of himself, and a proposed class of all others similarly situated. *Id.*, ¶ 21. The proposed class includes "persons who are citizens of different states from which Defendant[] is a citizen." *Id.*, ¶ 25.

145169909.1

## **LEGAL ARGUMENT**

### I.    FED. R. CIV. P. 12(B)(1) REQUIRES DISMISSAL BECAUSE THE COURT LACKS SUBJECT-MATTER JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

The Court should dismiss the Complaint because Plaintiffs' damages do not exceed the sum or value of $5 million, exclusive of interests and costs, as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). CAFA provides that federal courts may exercise original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).[2]

The party invoking federal jurisdiction has the burden of proving that it appears to a reasonable probability that the claim exceeds the statutory jurisdictional amount. *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). When a plaintiff pleads, in good faith, a particular amount above the jurisdictional threshold, a court will recognize a rebuttable presumption that the amount-in-controversy requirement has been satisfied. *Id.* To overcome this rebuttable presumption, the defendant must show "to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." *Id.* The legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim. *Id.* at 402. The amount in controversy is to be ascertained as of the time of filing. *Id.* at 395. The court may aggregate damages available under state law, including punitive damages and attorney's fees, when allowed by law or contract. *Dell v. Preferred Life Assurance Soc.*, 320 U.S. 238, 240 (1943).

Plaintiff alleges that he and his proposed class have suffered damages because Boardwalk 1000's use of Coinless Kiosks make it prohibitively difficult and inconvenient to redeem the full

---

[2] CAFA grants subject-matter jurisdiction pursuant to a federal court's power to hear cases between citizens of different states. U.S. Const., art. III, § 2. Under CAFA, the parties are required to be "minimally" diverse. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 (1967) ("Article III poses no obstacle to the legislative extension of federal jurisdiction, founded on diversity, so long as any two adverse parties are not co-citizens").

value of a players' gaming voucher. Compl., ¶ 34. Boardwalk 1000 first installed certain Coinless Kiosks on August 27, 2020. Nanette Horner Declaration ("Horner Decl."), ¶ 4. The Coin Vouchers are redeemable for one year. *See* N.J.S.A. 5:12-141.2(b).[3] The vouchers evidence Boardwalk 1000's debt to the patron for his or her winnings. Only Coin Vouchers obtained prior to November 5, 2021, are relevant to this action because players that received a Coin Voucher after November 5, 2021, still had the opportunity to redeem the Coin Voucher at the time Plaintiff filed his Complaint. Therefore, Plaintiff and his proposed class may only aggregate damages relating to Coin Vouchers obtained (but not redeemed) between August 27, 2020 and November 5, 2021. In other words, only vouchers that expired between August 27, 2021 and November 5, 2022 are relevant to the lawsuit.

Every casino is required to maintain a record of expired gaming vouchers and remit 25 percent of its expired gaming obligations to the New Jersey Division of Gaming Enforcement Casino Revenue Fund. *See* N.J.S.A. § 5:12-141.2(a) and (b). Boardwalk 1000 reported $136,110.35 in gaming vouchers that expired between August 2021 through December 2021. Horner Decl., ¶ 6. Boardwalk 1000 reported $434,002.99 in gaming vouchers that expired between January 2022 through November 2022. *Id.*, ¶ 7. In total, Boardwalk 1000 has reported $570,113.34 in gaming vouchers that expired from the date that it installed Coinless Kiosks through November 2022. *Id.*, ¶¶ 6-7. This number is inclusive of *all* expired gaming vouchers, not just Coin Vouchers.[4] *Id.*, ¶ 8. This number also includes the 25 percent that Boardwalk 1000 is required to remit to the Casino Revenue Fund. *Id.*, ¶ 9. Therefore, it is highly unlikely, if not legally impossible, for Plaintiff to recover $5 million worth of damages. As such, the Complaint must be dismissed for lack of subject-matter jurisdiction.

---

[3] "If the patron does not claim the money or redeem the representation of debt within one year of the date of the transaction . . . the obligation of the casino licensee to pay the patron shall expire, and 25% of the money or the value of the debt shall be paid to the Casino Revenue Fund by the casino licensee." N.J.S.A. 5:12-141.2(b).

[4] Coin Vouchers are worth, at most, $00.99. *See* Horner Decl., ¶ 4.

## II. FED. R. CIV. P. 12(B)(2) REQUIRES DISMISSAL BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER BOARDWALK 1000

The Court should dismiss the Complaint because the Eastern District of New York does not have general or specific jurisdiction over Boardwalk 1000 – a New Jersey Limited Liability Company with members domiciled in New Jersey and Florida. To survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a *prima facie* showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)). Plaintiff must demonstrate that there is personal jurisdiction over Boardwalk 1000 under New York's law and that exercising jurisdiction satisfies due process. *Id.* at 168. Here, there is no personal jurisdiction over Boardwalk 1000 under New York's CPLR §§ 301 (general personal jurisdiction) or § 302 (specific personal jurisdiction).

New York's long-arm statute is set forth in Section 301 and 302 of New York's Civil Practice Law and Rules ("CPLR"). As a non-domiciliary of New York, this Court may only exercise jurisdiction if it finds that Boardwalk 1000 is subject to either general jurisdiction under CPLR § 301 or specific jurisdiction under CPLR § 302.

Plaintiff cannot meet his burden to show that the Court has general or specific jurisdiction over Boardwalk 1000. Plaintiff has not and cannot allege "facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

### A. The Court Does Not Have General Jurisdiction over Boardwalk 1000 Pursuant to CPLR § 301

The Court does not have general personal jurisdiction over Boardwalk 1000 under CPLR § 301. A limited liability company is subject to general personal jurisdiction with respect to any cause of action, arising or not arising out of contacts with New York, if the company "has engaged in such a ***continuous and systematic*** course of 'doing business' [in New York] that a finding of its

6

'presence' [in New York] is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (emphasis added) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 565 N.E.2d 488, 490 (N.Y. 1990)); *see also Haidon v. Budlong & Budlong, LLC*, 318 F. Supp. 3d 568, 579 (W.D.N.Y. 2018) (applying *Sonera Holding B.V.* to limited liability company general personal jurisdiction analysis). The company's affiliations with the State must be so "continuous and systematic" as to render them essentially at home in the forum State. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). "Continuous and systematic is a fairly high standard in practice." *Helicopteros Nationals de Colombia v. Hall*, 466 U.S. 408, 414 (1984). Accordingly, the test of whether a court may exercise general jurisdiction over a non-resident defendant is "a simple pragmatic one that examines the defendant's activities in the state in the aggregate to determine whether it can be said to be present in the state 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Imagine Solutions, LLC v. Medical Software Computer Systems, Inc.*, No. 06-cv-3793, 2007 WL 1888309, at *4 (E.D.N.Y. June 28, 2007) (quoting *Laufer v. Ostrow*, 55 N.Y.2d 305, 310 (1982)). Bald assertions that a corporation is "doing business" in New York are inadequate to establish general jurisdiction. *BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 350 (S.D.N.Y. 2014).

"The existence of an office, the solicitation of business, the presence of bank accounts or other property, and the presence of employees or agents in the state" is indicia of general jurisdiction. *Imagine Solutions, LLC*, 2007 WL 1888309 at *4; *but see Landoil Res. Corp.*, 918 F.2d at 1043 ("New York law requires that the defendant be present in New York 'not occasionally or casually, but with a fair measure of permanence and continuity'") (citing *Tauza v. Susquehanna Coal Corp.*, 220 N.Y. 259, 267 (1917)); *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, 2006 WL 1147963, at *5 (S.D.N.Y. May 1, 2006) (foreign defendant not subject to general jurisdiction in New York where advertisements were not accompanied by any additional "activities of substance in the State").

145169909.1

Plaintiff does not – and cannot – allege any facts to demonstrate that Boardwalk 1000 has engaged in a "continuous and systemic course of 'doing business'" in New York. *See* Compl., ¶¶ 24, 27, 29-30. Boardwalk 1000 is a New Jersey Limited Liability Company. Horner Decl., ¶ 10. Its' members are citizens of New Jersey and Florida. *Id.*, ¶ 11. Boardwalk 1000 is not domiciled in New York, has no physical presence in New York, and does not conduct business in New York. *Id.*, ¶¶ 11-14. Instead, Boardwalk 1000 is organized under New Jersey law with a principal place of business in Atlantic City, New Jersey. *Id.*, ¶ 10, 15. Boardwalk 1000 is not registered to do business in New York. *Id.*, ¶ 16. Thus, the Court plainly lacks general personal jurisdiction over Boardwalk 1000 pursuant to CPLR § 301.

**B.**      **The Court Does Not Have Specific Jurisdiction over Boardwalk 1000 Pursuant to CPLR § 302**

Specific jurisdiction may be exercised over a non-domiciliary who:

(1) Transacts any business within the state or contracts anywhere to supply goods or services in the state; or

(2) Commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

(3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumer or services rendered in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

(4) owns, uses or possesses any real property situated within the state.

[CPLR § 302(a).]

To invoke specific jurisdiction, the cause of action alleged must arise from one of the enumerated activities outlined in CPLR § 302(a). *Id.* Not one of the enumerated activities applies to Boardwalk 1000 or the allegations raised in the Complaint.

There can be no dispute that subsections 2 and 4 are inapplicable to the issues at bar. The Complaint does not allege any facts suggesting that Boardwalk 1000 committed a tortious act within New York. *See generally* Compl. Nor does Boardwalk 1000 own any property in New York. *See* Horner Decl., ¶ 12, 18.

### 1. Plaintiff's Claims Do Not Arise From Boardwalk 1000's Transactions with New York

Under CPLR § 302(a)(1), a limited liability company is subject to specific personal jurisdiction under New York's long-arm statute if the company: (1) "transacts any business" in New York and (2) the plaintiff's cause of action is "arising from" such a transaction. *See* CPLR § 302(a)(1). "Transacting business" is defined as "purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). A foreign entity must purposefully avail itself of the privilege of "transacting business" in New York, and the connection between the transaction and the cause of action must be more than "merely coincidental." *Id.* at 249.

As discussed above, Plaintiff does not allege that Boardwalk 1000 transacted any business with Plaintiff for the provision of goods and services *in New York*. Plaintiff's claims are only purportedly connected to New York because Plaintiff was in New York when he became "aware[] that the practices identified [in the Complaint] were deceptive, unlawful, and/or unfair." Compl., ¶ 27. In fact, Plaintiff admits that his cause of action only arises from Boardwalk 1000's business transactions in New Jersey. *Id.*, ¶¶ 26 ("thousands of persons each day . . . have wagered at Hard Rock casinos in New Jersey"); 30 ("Plaintiff visited the Hard Rock Casino in Atlantic City"). The Complaint is devoid of any factual allegation that Boardwalk 1000 "purposefully availed itself" of the privilege of conducting business in New York. Because the Complaint fails to allege that Boardwalk 1000 ever transacted business in New York or has a casino in New York, and further

9

fails to establish a connection between a New York business transaction and Plaintiff's causes of action, the Court lacks specific personal jurisdiction over Boardwalk 1000.

**2.   Boardwalk 1000 Did Not Commit a Tortious Act Outside New York That Resulted in Injury to Plaintiff in New York**

Alternatively, a limited liability company is subject to specific personal jurisdiction under New York's long-arm statute if the company: (1) committed a tortious act outside New York; (2) the cause of action arises from that act; (3) the act caused injury to a person or property within New York; (4) the company expected or should have reasonably expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce. *See* CPLR § 302(a)(3).

Courts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the "original event which caused the injury." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999) (citing *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683 (N.Y. 2d Dep't 1987)). The "original event" is generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort. *Id.* In *Hermann*, for example, the plaintiff attempted to bring a lawsuit in New York state court against a group of doctors that practiced in Connecticut. *Hermann*, 135 A.D.2d at 683. Although the doctors performed a medical procedure on the plaintiff in Connecticut, plaintiff felt the consequences of the doctors' alleged negligence in her New York home. *Id.* The New York court nevertheless refused to find an injury in New York because "[t]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by plaintiff." *Id.* The court viewed this "original event" as having occurred in Connecticut, where the plaintiff was located when she received the medical treatment, and where the first effects of the doctor's alleged negligence – whether felt or not – were inflicted. *Id.*

10

Boardwalk 1000 only operates within Atlantic City, New Jersey. Horner Decl., ¶¶ 15-17. Indeed, Plaintiff has not even claimed that Boardwalk 1000's allegedly tortious conduct resulted in an injury *in* New York. *See* Compl., ¶ 27 (citing "Plaintiff's awareness [in New York] that the practices identified [in the Complaint] were deceptive, unlawful, and/or unfair" as the factual basis for proper venue in New York). Like the medical negligence claim in *Hermann*, Plaintiff claims that he became aware of his alleged injury while in New York. Plaintiff's claims have no other actual or alleged connection to New York. The "original event" giving rise to the cause of action, however, occurred in New Jersey. Additionally, like the plaintiff in *Hermann*, Plaintiff in this case was not located in New York during the original event; Plaintiff was in New Jersey. Compl., ¶¶ 30-34. Therefore, this Court does not have personal jurisdiction over Boardwalk 1000 pursuant to CPLR § 302(a)(3) because Plaintiff does not and cannot plead any facts suggesting that the original event occurred in New York.

### C. The Eastern District of New York Cannot Exercise Personal Jurisdiction Over Boardwalk 1000 Consistent with the Due Process Clause

The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 261 (2017). A two-step inquiry determines whether the exercise of personal jurisdiction over an out-of-state defendant comports with the Due Process Clause: (1) whether the defendant has certain "minimum contacts" with the forum state; and (2) whether the exercise of personal jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

#### 1. Boardwalk 1000 Lacks Minimum Contacts with New York

The Due Process Clauses of the Constitution requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316. Further,

whether a defendant "should reasonably anticipate being haled into court" in the forum state is "critical to due process analysis." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The purpose of the minimum contacts requirement is to protect the defendant against the burdens of litigating at a distant or inconvenient forum, and to ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum. *See id.* at 292. "When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by . . . severing its connection with the State." *Id.* at 298 (internal quotes and citation omitted).

Here, Boardwalk 1000 could not reasonably have anticipated being haled into this Court because it has not availed itself of the benefits and protections of New York law. Boardwalk 1000 has no assets in New York and does not regularly conduct business in New York. *See* Horner Decl., ¶¶ 14, 18; *see also Citibank, N.A. v. Intercontinental Bank,* 646 N.Y.S.2d 261, 262-63 (1996) (company cannot reasonably anticipate being haled into court where it is not engaged in any business activities, has no office, owns no real property, and only sent check for collection to forum state); *Martinez v. Am. Standard,* 457 N.Y.S.2d 97, 98 (1982) (company cannot reasonably anticipate being haled into court where is has no direct contacts with state, is incorporated elsewhere, conducts business elsewhere, has no offices or employees in forum state, does not solicit business in forum state, and does not ship items to forum state); *see also Holey Soles Holdings, Ltd. v. Foam Creations, Inc.,* 2006 WL 1147963, at *5 (S.D.N.Y. May 1, 2006) (advertisements alone, without additional "activities of substance in the State", are insufficient to subject foreign defendant to general jurisdiction in New York). Accordingly, Boardwalk 1000 lacks the requisite minimum contacts with New York and, as a result, should not be haled into this Court.

145169909.1

### 2. Exercise of Personal Jurisdiction over Boardwalk 1000 Offends Traditional Notions of Fair Play and Substantial Justice

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citing *Int'l Shoe*, 326 U.S. at 320). The Court may consider the burden on the defendants, the forum state's interest in the dispute, the plaintiff's interest in obtaining convenient relief, the interstate judicial system's interest in obtaining the most efficient resolution, and the shared interest of the States in furthering fundamental substantive social policies. *See id.* (citations omitted). The primary concern, however, is the burden on the defendant, including the "more abstract matter of submitting [the Defendant] to the coercive power of a State that may have little legitimate interest in the claims in question." *Bristol-Myers Squibb Co.*, 582 U.S. at 263.

These factors weigh against exercising jurisdiction over Boardwalk 1000. The burden of litigating this action in New York on Boardwalk 1000 is heavy, as all of its potential witnesses and evidence is located in southern New Jersey. *See generally* Horner Decl. Because the facts giving rise to the Complaint occurred in New Jersey, the State of New York has little, if any, interest in this dispute. On the other hand, New Jersey has a strong interest in the dispute because the court's ultimate resolution may implicate New Jersey's intricate gaming regulatory scheme. *See Knight v. City of Margate*, 86 N.J. 374, 380, 431 A.2d 833 (1981) ("The statutory and administrative controls over casino operations established by the [Casino Control Act] are extraordinarily pervasive and intensive . . . Over 11 statutory articles and almost 200 separate provisions cover virtually every facet of casino gambling"). For example, Plaintiff alleges that Boardwalk 1000 failed to place signs near the Coinless Kiosks to inform players on where to cash out the Coin Vouchers. New Jersey regulations, however, require the Division of Gaming Enforcement to approve all floor plans and locations of kiosks of

casino cages. N.J.A.C. § 13:69C-7.3. Additionally, Boardwalk 1000s' dismissal from the case will not, on its own, preclude Plaintiff from obtaining relief in another forum. Therefore, exercising jurisdiction over Boardwalk 1000 under these circumstances is unreasonable and does not comport with due process requirements. As such, the Court lacks jurisdiction over Boardwalk 1000 and the Court should dismiss it from this action.

### III.   FED R. CIV. P. 12(B)(6) REQUIRES DISMISSAL OF PLAINTIFF'S NEW YORK AND FLORIDA CONSUMER FRAUD CLAIMS.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Id.* at 555. Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *Id.* at 152.

Because a choice of law analysis is fact intensive, courts often decline to make a choice of law determination at the motion to dismiss stage. *Holborn Corp. v. Sawgrass Mutual Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018). Where the relevant facts are sufficiently clear, however, courts in the Second Circuit have engaged in a choice-of-law analysis at the motion to dismiss stage. *Id.*

There is no dispute that Plaintiff's various claims for relief arise under state law, including its claims for violations of New York, Florida, and New Jersey's consumer fraud statutes. *See* Compl., ¶ 44. When a federal district court sits in diversity, it applies that state's choice of law rules. *Klaxon Co.*

14

*v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In New York, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). If an actual conflict exists, the court must then decide which choice-of-law test is most appropriate and apply that test to determine which state law applies to the claim. *Id.*

In New York, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008). An actual conflict is present "[w]here the applicable law from each jurisdiction provides different substantive rules." *Curley*, 153 F.3d at 12. Most of the courts that have addressed the issue have determined that the consumer fraud laws in the fifty states differ in relevant respects. *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. at 147 (collecting cases).

Because there are relevant conflicts in the states' consumer fraud laws, the Court must proceed to the second step of the choice-of-law inquiry, and determine which jurisdiction has the greatest interest in this litigation. *See id.* at 148. In tort cases where conduct-regulating standards are at issue, courts generally apply the law of the state where the tort occurred, as that state usually has the greatest interest at stake in the litigation. *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006). Importantly, while "[s]tates have a strong interest in protecting consumers with respect to sales within their borders . . . they have a relatively weak interest, if any, in applying their policies to consumers or sales in neighboring states." *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. at 149 (citing *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 278 (D. Mass. 2004)).

145169909.1

As explained at length above,[5] the alleged tort occurred in Atlantic City, New Jersey. According to the Complaint, "Plaintiff visited the Boardwalk 1000 Casino in Atlantic City." Compl., ¶ 30. While at the Atlantic City casino, "the [gaming] machine printed vouchers with the balance owed, which contained a dollar amount and additional money between one and ninety-nine cents." *Id.*, ¶ 31. Plaintiff then "attempted to cash out these tickets at ticket redemption kiosks *in the casino.*" *Id.*, ¶ 32 (emphasis supplied). "When Plaintiff received 'cash out' tickets from the ticket redemption machines instead of coins, Plaintiff either inserted these new tickets into other slot machines [in the casino] or discarded them because of the time, inconvenience, and obstacles to redeeming them." *Id.*, ¶ 34. The relevant facts are sufficiently clear: Plaintiff was allegedly harmed *in* New Jersey. As such, New Jersey's consumer fraud statute, N.J.S.A. 56:8-1 *et. seq.*, should apply this action, and the Court should dismiss Plaintiff's Florida and New York consumer fraud claims.

## IV.  FED. R. CIV. P. 12(B)(3) REQUIRES DISMISSAL BECAUSE VENUE IS IMPROPER

Fed. R. Civ. P. 12(b)(3) provides for dismissal based on improper venue. 28 U.S.C. § 1391(b), which governs venue, provides:

A civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

[28 U.S.C. § 1391(b).]

---

[5] *See* Section II(B), above.

As explained above, Boardwalk 1000 does not reside in New York. Instead, Plaintiff purportedly attempts to place venue in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2). *See* Compl., ¶ 27 ("Venue is in this District . . . because Plaintiff resides in Nassau County and a substantial part of the events or omissions giving rise to these claims occurred here, including Plaintiff's awareness that the practices identified were deceptive, unlawful, and/or unfair").

Venue can, of course, be proper in multiple districts, "as long as 'a substantial part' of the underlying events took place in those districts." *Gulf Ins. Co. v. Glassbrenner*, 417 F.3d 353, 356 (2d Cir. 2005); *Cont'l Ins. Co. v. Securi Enters., Inc.*, No. 09-CV-3731, 2010 WL 3702559, at *2 (E.D.N.Y. Aug. 16, 2010) ("Venue is appropriate in each district where a substantial part of the events or omissions occurred, and thus venue may be appropriate in a given district even if a greater portion of the events occurred elsewhere"). A two-part inquiry determines whether venue is appropriate under 28 U.S.C. § 1391(b)(2): (1) identify the nature of the claims and the alleged acts or omissions giving rise to the claims; and (2) determine whether a substantial part of the acts or omissions occurred in the district where the suit was filed. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). "Substantiality" is determined by "assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id.* at 432-33.

An act or omission in the plaintiff's chosen forum is deemed "significant" if the act has a "close nexus to the claims." *Id.* Notably, "only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a substantial part of the events are to be considered." *Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 554 (E.D.N.Y. 2011) (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)). Although § 1391(b)(2) does not require that the most substantial part of the events giving rise to the claim occurred in the Eastern District, the Second Circuit has cautioned district

courts "to take seriously the adjective 'substantial' " and thus for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question." *Gulf Ins. Co.*, 417 F.3d at 357 (emphasis in original).

### A. The Relevant Claims are Consumer Fraud, Breach of Contract, Conversion, and Unjust Enrichment Stemming from Boardwalk 1000's Use of Coinless Kiosks at its Atlantic City Casino

The relevant claims in this venue analysis include consumer fraud, breach of contract, conversion, and unjust enrichment. *See generally* Compl. These claims are based on Boardwalk 1000's use of Coinless Kiosks for players as an additional method to redeem their gaming vouchers. According to the Complaint, the acts giving rise to Plaintiff's claims are: (1) Plaintiff's visit to Boardwalk 1000's Atlantic City, New Jersey casino (2) Boardwalk 1000's offering of the Coinless Kiosks for patrons to cash out vouchers after playing slot machines; (3) Boardwalk 1000's failure to post signage informing players on where to cash the Coin Vouchers if they opt to use the Coinless Kiosks; and (4) Plaintiff's decision to discard or insert the Coin Vouchers dispensed from the Coinless Kiosks into other slot machines because of the "time, inconvenience, and obstacles to redeeming them." Compl., ¶¶ 6-8, 10, 12, 15, 16, 30, 34, 45-49, 55, 60, 65.

### B. None of the Acts or Omissions Giving Rise to Plaintiff's Claims Occurred in the Eastern District of New York

Through the Complaint, Plaintiff identified a single purported connection between the Eastern District of New York and the instant litigation that it contends supports venue in this Court: Plaintiff became aware he had a potential claim against Boardwalk 1000 while in New York. Compl., ¶ 27. But only events *that directly give rise to a claim* are relevant to the venue analysis. *Cold Spring Harbor Lab.*, 762 F. Supp. 2d at 554. Plaintiff's after-the-fact awareness of his potential claims, however, does not *give rise* to the claims. *Cf. Gabelli v. S.E.C.*, 568 U.S. 442, 447 (2013) (for statute of limitation purposes, "a right accrues when it comes into existence," not when it is discovered). In short, all acts and omissions giving rise to Plaintiff's claim occurred in New Jersey.

18

Plaintiff's alleged claims had already come into existence by the time Plaintiff returned to New York. Plaintiff has failed to plead a single event or omission that occurred in New York that could have given rise to his claims, let alone a "substantial part" of the acts and omissions giving rise to his claims. For this reason, the Court must dismiss Plaintiff's Complaint for improper venue under Fed. R. Civ. P. 12(b)(3).

## V. THE COURT SHOULD TRANSFER VENUE TO THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1404(A)[6]

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) is intended "to prevent waste of 'time, energy and money' and 'to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense.'" *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 347 (E.D.N.Y. 2012). The district court is afforded broad discretion to determine whether a venue transfer is appropriate under Section 1404(a), and notions of convenience and fairness are considered on a case-by-case basis. *Id.* In determining whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would "promote the convenience of parties and witnesses and would be in the interests of justice. *Id.*

### A. The Action Could Have Been Brought in the District of New Jersey

A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located. 28 U.S.C. § 1391(b)(1). As explained above, Boardwalk 1000 is a citizen of New Jersey and Florida. Horner Decl., ¶ 11. Additionally, Boardwalk 1000 only owns property in New Jersey. *Id.*, ¶ 15, 17. Boardwalk 1000 is the

---

[6] As explained in Section IV, *supra*, venue is improper in the Eastern District of New York. Pursuant to 28 U.S.C. § 1406(a), if a case is filed in an improper venue, the district court may transfer the case in lieu of dismissal to any district in which it could have been brought.

145169909.1

only Defendant in this matter. Therefore, all defendants are residents of New Jersey, and the action may have been properly brought in the District of New Jersey.

**B.    Transfer to the District of New Jersey Would Promote Convenience and be in the Interest of Justice.**

A district court should consider the following factors in the exercise of its discretion to transfer venue:

(1) the plaintiff's choice of forum,

(2) the convenience of the witnesses,

(3) the location of relevant documents and relative ease of access to sources of proof,

(4) the convenience of the parties,

(5) the locus of operative facts,

(6) the availability of process to compel the attendance of unwilling witnesses, [and]

(7) the relative means of the parties.

[*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).]

Some courts have identified additional factors, including "the forum's familiarity with governing law," and "trial efficiency and the interest of justice, based on the totality of the circumstances." *Glass v. S & M NuTec*, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006). There is no strict formula for application of these factors, and no single factor is determinative. *EasyWeb Innovations, LLC*, 888 F. Supp. 2d at 348.

**1.    Plaintiff's Choice of Forum Should be Given Little Weight Because the Operative Facts have Little or No Connection with the Eastern District of New York**

Although the plaintiff's forum choice is "given great weight," the weight given to this factor is diminished where the operative facts have "little or no connection" with the forum chosen by the plaintiff. *Hernandez v. Graebel Van Lines, Inc.*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991). Additionally, "[w]here it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight

20

whatever, and the transfer of venue is appropriate." *Pierce v. Coughlin*, 806 F. Supp. 426, 429 (S.D.N.Y. 1992).

New York has little to no connection with the operative facts. Plaintiff's claims accrued in Atlantic City, New Jersey. *See* Compl., ¶¶ 30-34. Only one single fact ties New York to this action: "Plaintiff [became aware] that the practices identified [in the Complaint] were deceptive, unlawful, and/or unfair." *Id.*, ¶ 27. Plaintiff does not allege that Boardwalk 1000 harmed him in New York and does not allege that Boardwalk 1000 committed any acts or omissions in New York. Therefore, it appears that Plaintiff only filed the Complaint in the Eastern District of New York for his own convenience. *See Cobra Partners L.P. v. Liegl*, 990 F. Supp. 332, (S.D.N.Y. 1998) ("venue statutes should be construed narrowly, so as to prevent a plaintiff from simply selecting the place of trial which best suits his or her convenience"). Because the Eastern District of New York has little to no connection with the operative facts of this matter, this factor favors transfer to the District of New Jersey.

### 2. The Convenience of Witnesses Favors Transfer to the District of New Jersey

In deciding whether to disturb the plaintiff's choice of forum, the convenience of the witnesses is generally the most important factor in the transfer analysis. *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006).

Boardwalk 1000 may potentially call the following principal witnesses: (1) Alicia Magee, the Vice President of Finance; (2) Dave Polizzi, the Vice President of Slots; (3) Michelle Yarrow, the Director of Compliance; and (4) a representative of SOSH Architects. Horner Decl., ¶ 19. Alicia Magee is expected to testify about Boardwalk 1000's financial reporting on expired vouchers. *Id.*, ¶ 19(a). Dave Polizzi is expected to testify about the "ticket in, ticket out" process and Boardwalk 1000's vouchers. *Id.*, ¶ 19(b). Michelle Yarrow is expected to testify about Boardwalk 1000's compliance with New Jersey gaming regulations and its internal controls. *Id.*, ¶ 19(c). The SOSH

Architects representative is expected to testify about Boardwalk 1000's floor plan, including the Coinless Kiosk and Casino Cage locations. *Id.*, ¶ 19(d). All these individuals reside and are employed in southern New Jersey. *Id.*, ¶ 19. If Boardwalk 1000 elects to call additional witnesses to testify, those individuals would also likely reside in New Jersey because Boardwalk 1000's only physical office is in Atlantic City, New Jersey.

Transfer to the District of New Jersey would not inconvenience Plaintiff's class. It is unlikely that much – if any – testimony is needed from Plaintiff or his proposed class. *See* Compl., ¶ 40. As Plaintiff stated, "[n]o individual inquiry is necessary since the focus is only on the Defendant's practices." *Id.* It is unlikely that transfer will create much more than a small inconvenience to Plaintiff, in light of his willingness to travel to Atlantic City multiple times over the course of a summer season. Compl., ¶ 30 ("Plaintiff visited the Hard Rock Casino in Atlantic City between June and October, 2022, and/or among other times"). Additionally, transfer might benefit other members of the proposed class that live in, for example, Pennsylvania or Virginia. Compl., ¶ 26, 36. Because most of the testimony will come from witnesses located in New Jersey, this factor favors transfer of venue to the District of New Jersey.

### 3. A Majority of Documents are Located in the District of New Jersey

Courts have generally held that the location of documents factor is relatively insignificant "given the technological age in which we live, with the widespread use of, among other things, electronic document production." *See, e.g., Distefano v. Carozzi N. Am., Inc.*, No. 98 Civ. 7137(SJ), 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 16, 2002) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, modern photocopying technology deprives this issue of practical or legal weight"). Nonetheless, the majority of relevant documents are in Boardwalk 1000's possession, and this factor favors transfer to the District of New Jersey.

22

### 4. Boardwalk 1000's Inconvenience Could Be Completely Eliminated by Transfer

In terms of convenience of the parties, courts are generally hesitant to grant a transfer "[w]here transfer would merely shift the inconvenience from one party to the other." *EasyWeb Innovations, LLC,* 888 F. Supp. 2d 342, 352-53 (E.D.N.Y. 2012). Transfer of venue may be appropriate, however, where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the nonmoving party's inconvenience. *Id.*

As explained above, all of Boardwalk 1000's principal witnesses are located in southern New Jersey. Therefore the "inconvenience for the party moving for transfer could be completely eliminated" by transferring the matter to the District of New Jersey. As further explained above, and as admitted by Plaintiff, "the focus [of this action] is only on the Defendant's practices." Compl., ¶ 40. Therefore, transfer would not "substantially add" to Plaintiff's inconvenience. As such, this factor favors transfer to the District of New Jersey.

### 5. The Operative Facts Occurred in New Jersey

The locus of operative facts is an important factor to be considered in deciding whether a motion to transfer should be granted. *Scherillo v. Dun & Bradstreet, Inc.,* 684 F. Supp. 2d 313, 325 (E.D.N.Y. 2010). To ascertain the locus of operative facts, courts should look to "the site of the events from which the claim arises." *Id.*

As explained at length above, all the operative facts of the underlying action occurred in New Jersey. "Plaintiff visited the Hard Rock Casino in Atlantic City." Compl., ¶ 30. While at the Atlantic City casino, "the [gaming] machine printed vouchers with the balance owed, which contained a dollar amount and additional money between one and ninety-nine cents." *Id.*, ¶ 31. Plaintiff then "attempted to cash out these tickets at ticket redemption kiosks *in the casino.*" *Id.*, ¶ 32 (emphasis supplied). "When Plaintiff received 'cash out' tickets from the ticket redemption machines instead of coins, Plaintiff either inserted these new tickets into other slot machines [in the casino] or

23

discarded them because of the time, inconvenience, and obstacles to redeeming them." *Id.*, ¶ 34. This factor clearly favors transfer to the District of New Jersey.

### 6.  The Process to Compel Attendance of Unwilling Witnesses Favors Transfer to the District of New Jersey

Rules 45(b)(2) and 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure prohibit a subpoena from directing a witness to travel more than 100 miles. Fed. R. Civ. P. 45. When, however, there is no indication that a non-party witness would refuse to appear, this factor is neutral. *EasyWeb Innovations, LLC*, 888 F. Supp. 2d at 354.

Most witnesses will be located in or around Atlantic City. Boardwalk 1000's property is located over 100 miles away from the Eastern District of New York, Central Islip Courthouse.[7] While there is currently no reason to believe that a non-party witness would refuse to appear, it is likely that any such party would be outside the Court's 100-mile jurisdiction. This factor either favors transfer or is neutral.

### 7.  Plaintiff's Financial Ability to Continue to Litigate this Class Action will not be Impacted by a Transfer to the District of New Jersey

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994). The concern for a plaintiff's financial ability to pursue the litigation is mitigated, however, when the plaintiff is bringing a suit against a large corporation as a class action lawsuit. *See Jones v. Walgreens Co.*, 463 F. Supp. 2d 267, 278 (D. Conn. 2006).

Plaintiff brings this class action against Boardwalk 1000 pursuant to CAFA. While it is undisputed that Boardwalk 1000 likely has a greater financial ability to pursue litigation than the individual lead Plaintiff, Plaintiff's financial means is less relevant to the venue transfer analysis

---

[7] The Court may take judicial notice of this fact pursuant to Fed. R. Evid. 201(b)(2).

because Plaintiff has brought his claims on behalf of a large class. *See* Compl., ¶ 26 ("the members of the class Plaintiff seeks to represent are more than 100, because the practice of issuing vouchers for change has affected thousands of persons each day"). Therefore, this factor favors transfer to the District of New Jersey.

<blockquote>

**8.** **The District of New Jersey has a Greater Familiarity with the Governing Law**
</blockquote>

Familiarity with the governing law as a factor in determining transfer of venue is "generally given little weight in federal courts." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006). Where there are state law claims, however, this factor favors placing venue in the governing law's state. *Id.*

As explained above, Plaintiff's consumer fraud claim must be based on New Jersey's Consumer Fraud Act, *N.J.S.A.* 56:8-1 *et. seq.*[8] Additionally, to the extent that Plaintiff's claims implicate New Jersey's intricate regulatory scheme, the District of New Jersey is certainly more familiar than New York courts with New Jersey's gaming and casino regulations. Therefore, this factor favors transfer to the District of New Jersey.

Taken together, the venue transfer factors identified in *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006), strongly favor transfer to the District of New Jersey. The Court must, in the interests of justice and for the convenience of the parties, transfer venue to the District of New Jersey.

<u>**CONCLUSION**</u>

For these reasons, Boardwalk 1000 respectfully request that Plaintiff's Complaint be dismissed in its entirety with prejudice, or in the alternative, transfer venue to the District of New Jersey.

Dated: April 28, 2023

---

[8] *See* Section III, above.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: *Eileen Oakes Muskett*
Eileen Oakes Muskett, Esquire
1301 Atlantic Avenue
Midtown Building, Suite 401
Atlantic City, NJ 08401
Phone: (609) 348-4515
Fax: (609) 348-6834
emuskett@foxrothschild.com
*Attorneys for Defendant Boardwalk 1000, LLC (d/b/a Hard Rock Hotel & Casino Atlantic City)*

145169909.1