UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
VINCENT DIBENEDETTO, *individually and on behalf of all others similarly situated,*

                                    Plaintiff,

                    -against-

BOARDWALK 1000, LLC (d/b/a Hard Rock Hotel & Casino Atlantic City),

                                    Defendants.
------------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
22-CV-6759 (JMA) (AYS)

**FILED**
**CLERK**

12:30 pm, Mar 22, 2024

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

Plaintiff Vincent DiBenedetto ("Plaintiff") alleges, in this putative class action, that the defendant casino's practice of issuing "cash out tickets" rather than cash for certain transactions violates state consumer protection laws and constitutes breach of contract, conversion, and unjust enrichment.  Plaintiff resides in Nassau County, New York, but visited the Hard Rock Hotel & Casino in Atlantic City, New Jersey (the "Casino"), where he was affected by this allegedly unlawful practice.  Defendant Boardwalk 1000, LLC ("Defendant") is a Florida corporation that operates and manage the Casino.  (Compl. ¶¶ 1, 6, 24.)  Defendant has moved to dismiss or transfer venue, arguing, among other things, that personal jurisdiction is lacking and venue is improper in this District.

For the reasons stated below, the Court grants Defendant's motion and transfers this case to the District of New Jersey.

## I.  BACKGROUND

**A.  The Allegations in Plaintiff's Complaint**

"To participate in [the] slots and electronic table games" at the Casino, "customers insert cards, cash, tokens, and/or coins."  (Compl. ¶ 6.)  "After a gaming session, players 'cash out' unused credits on the machine."  (Compl. ¶ 7.)  The machine prints out a "cash-out ticket" that "can be redeemed at ticket redemption kiosks positioned throughout the casino."  (Compl. ¶ 8.)  These ticket redemption kiosks, however, only "pay out whole dollar amounts" and do not "dispense coins."  (Compl. ¶ 10.)  "Instead of paying out the full balance of these 'cash out' tickets and returning the funds to the customer in full, [the Casino] converts 'cash out' tickets into a partial cash payment and another 'cash out' ticket in lieu of dispensing coins."  (Compl. ¶ 13.)  For example, it appears that if a customer inserts a "cash-out ticket" worth $102.15 into a ticket redemption kiosk, the customer will receive $102 in cash and another "cash-out ticket" for the remaining $0.15.  (See Compl. ¶ 18.)

Plaintiff alleges that "[n]o signage is available anywhere in the casino informing players on where to cash the remaining balance."  (Compl. ¶ 12.)  "Many players are unsure of where to redeem their vouchers," and many of the customers who do figure out where to redeem these vouchers "decide it is inconvenient to wait in a line for over forty minutes to obtain the change they are entitled to."  (Compl. ¶ 13.)  Accordingly, Plaintiff alleges that "[m]ost of these 'cash out' tickets for coins are never redeemed."  (Compl. ¶ 14.)

Plaintiff, who resides in Nassau County, visited the Casino in Atlantic City on various occasions. (Compl. ¶¶ 28, 30.)  When Plaintiff attempted to "cash out" his "tickets" at the Casino's ticket redemption kiosks, he only received, pursuant to the practices outlined above, the "whole dollar amount" of the "vouchers"; for the remaining balance, he received "'cash out' tickets"

2

instead of coins. (Compl. ¶¶ 31–34.) "Plaintiff either inserted these new tickets into other slot machines or discarded them because of the time, inconvenience, and obstacles to redeeming them." (Compl. ¶ 34.)

Plaintiff alleges, without further explanation, that a "substantial part of the events and omissions giving rise to [his] claims occurred in [Nassau County], including Plaintiff's <u>awareness</u> that the practices identified were deceptive, unlawful and/or unfair." (Compl. ¶ 27 (emphasis added).)

**B. <u>Additional Evidence Concerning Defendant's Conduct Directed at or Involving New York</u>**

Because certain issues before the Court, including the question of personal jurisdiction, concern Defendant's contacts with New York, Plaintiff cites additional evidence, in its motion papers, concerning these contacts. The primary evidence cited by Plaintiff is testimony given by executives of Defendant at a May 2018 hearing before the New Jersey Casino Control Commission, which was considering whether to grant Defendant's casino license in advance of the Casino's opening in June 2018. (<u>See</u> State Of New Jersey, Casino Control Commission, Public Meeting No. 18-05-09, May 9, 2018, at 77–201 (available at https://www.nj.gov/casinos/services/meetings/transcripts/2018/050918.pdf) (last visited on March 22, 2024).)

At the hearing, one executive explained that the Casino held a "three-city PR event" in Atlantic City, New York City, and Philadelphia to "announce[]" the Casino's "grand opening date." (<u>Id.</u> at 179; <u>see also</u> <u>id.</u> at 194.) The "grand event" for this announcement was held at the Hard Rock Café in Times Square. (<u>Id.</u> at 179.) This event at the Hard Rock Café was "an over-the-top experience with . . . so much media," including media from Atlantic City who were brought up to New York. (<u>Id.</u>)

3

Testimony at the hearing also suggested that Defendant intended to target other marketing efforts at New York. (Id. at 126 "([W]e will create a reason for people that are already in New York or Pennsylvania, certainly going down into the Baltimore, Maryland, area, say, you know, we haven't been to Atlantic City in a while."); id. at 137 ("[W]e're looking to do a pullout in major publications here in the Eastern part of the United States"); id. at 179 (We're doing a very good job making the entire East Coast as well as the entire country very aware that there's going to be an exceptional product opening in this market in the end of June"); see also id. at 106, 144).

The Casino's total revenue in 2022 was approximately $600 million and between 20 and 30 percent of that revenue came from northern New Jersey and downstate New York. (Pl. Mem. Opp'n at 6.)

## II. DISCUSSION

### A. Rule 12(b)(2):  Lack of Personal Jurisdiction

**1. Legal Standards**

When a defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) based on alleged lack of personal jurisdiction, "the plaintiff bears the burden of establishing personal jurisdiction over the defendant." NuMSP, LLC v. St. Etienne, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) (citing Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010)). "Where the parties have not engaged in discovery, as here, a plaintiff seeking to defeat a motion to dismiss based on the lack of personal jurisdiction need only make a prima facie showing that jurisdiction exists." Id. (citing Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84-85 (2d Cir. 2013)). A plaintiff can make such a showing by providing "affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010)

4

(quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)). "In deciding whether the plaintiff has met this burden, the pleadings and affidavits must be viewed in the light most favorable to the plaintiff, with all doubts resolved in its favor." Commodity Futures Trading Comm'n v. TFS-ICAP, LLC, 415 F. Supp. 3d 371, 380 (S.D.N.Y. 2019); see also GlaxoSmithKline LLC v. Laclede, Inc., No. 18-CV-4945, 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019) (stating, where there has been no discovery on the issue, the court must credit plaintiff's "averment of jurisdictional facts as true[,]" and, moreover, "the allegations in the complaint must [also] be taken as true to the extent they are uncontroverted by the defendant's affidavits, which the district court may also consider") (citing MacDermid, Inc. v. Deiter, 702 F.3d 725, 727-28 (2d Cir. 2012)).

"In determining personal jurisdiction over a non-domiciliary, the Court engages in a two-step analysis." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC, 509 F. Supp. 3d 38, 47 (S.D.N.Y. 2020). "The first step is the application of New York's long-arm statute." Id. "If the exercise of personal jurisdiction is deemed appropriate pursuant to the long-arm statute, the second step is to determine whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Id.

**2. Analysis**

Plaintiff asserts that personal jurisdiction exists under N.Y. CPLR §§ 302(a)(1) and (a)(3)(ii). As explained below, Plaintiff has not established personal jurisdiction under either provision.

   *i. CPLR § 302(a)(1)*

N.Y. CPLR § 302(a)(1) permits the exercise of personal jurisdiction over a defendant if: (1) the defendant "transacts any business within the state or contracts anywhere to supply goods

or services in the state"; and (3) the plaintiff's cause of action "aris[es] from" that "act." N.Y. CPLR § 302(a)(1) ("As to a cause of action arising from any of the acts enumerated in this section . . . .").

Plaintiff maintains that the promotional event held for the Casino in New York constitutes "transact[ing] . . . business within" New York.  Even assuming that Plaintiff is correct, Plaintiff has not alleged in the Complaint or offered any evidence to establish that Plaintiff's causes of action arose from this transaction.

The New York Court of Appeals has explained that:

> [T]he plaintiff's cause of action must have an "articulable nexus" or "substantial relationship" with the defendant's transaction of business here.  At the very least, there must be "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim[.]"  This inquiry is "relatively permissive" and an articulable nexus or substantial relationship exists "where at least one element arises from the New York contacts" rather than "every element of the cause of action pleaded,"  The nexus is insufficient where the relationship between the claim and transaction is "too attenuated" or "merely coincidental."

D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro, 29 N.Y.3d 292, 298–99 (2017) (cleaned up).

Plaintiff does not even attempt to articulate how his causes of action arise from this promotional event.  Moreover, the Court concludes that, given the record here, Plaintiff cannot meet the "arising from" standard in CPLR § 302.  None of the elements of Plaintiff's causes of action "aris[e]" from Defendant's New York contacts.  Plaintiff's claims are far "too attenuated," D & R Glob. Selections, 29 N.Y.3d at 299, from the promotional event in New York (or Defendant's other marketing efforts directed at New York) for his claims to qualify as "arising from" that event or those efforts.  Cf. DeLorenzo v. Viceroy Hotel Grp., LLC, 757 F. App'x 6, 9–10 (2d Cir. 2018) (holding that plaintiff's claims based on sexual assault at foreign hotel did not

arise out of "hotel contract" that the plaintiff entered though online booking while she was in New York and explaining "[c]ourts have consistently held that the in-state activity of booking a hotel room is too remote from negligence alleged to have taken place at a foreign hotel to satisfy [New York's long arm statute]") (cleaned up); D & R Glob. Selections, 29 N.Y.3d at 299 (finding § 302(a)(1) satisfied in breach of contract case where parties engaged in activities in New York in furtherance of their agreement).

Notably, Plaintiff does not even allege that he was aware of the 2018 promotional event or that this event (or any other marketing efforts targeted at New York) played any role in him deciding to patronize the Casino. In any event, even if Plaintiff had alleged any such facts, that would still be insufficient to meet CPLR § 302(a)(1)'s "arising from" requirement. See Diskin v. Starck, 538 F. Supp. 877, 880 (E.D.N.Y. 1982) (finding § 302(a)(1) was not satisfied where children were sexually assaulted at camp in Vermont and the defendant owners of the camp advertised the camp in a "newsweekly published in New York, sent brochures that [the New York-domiciled parents] requested after seeing the advertisement, [and] contracted with them over the telephone and through the mail to accept the infant plaintiffs at [the camp]").

Plaintiff has not established that personal jurisdiction exists over Defendant pursuant to § 302(a)(1).

### ii. CPLR § 302(a)(3)(ii)

N.Y. CPLR § 302(a)(3)(ii) permits the exercise of personal jurisdiction where the defendant:

> commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

N.Y. CPLR §302(a)(3)(ii).

Plaintiff cannot rely on this provision because Defendant's alleged misconduct did not "caus[e] injury" to Plaintiff "within" New York. In determining "where the injury was caused, courts apply a 'situs-of-injury test,' which requires the court 'to locate the original event which caused the injury.'" Muraco v. Sandals Resorts Int'l, No. 14-CV-4896, 2015 WL 9462103, at *4 (E.D.N.Y. Dec. 28, 2015) (quoting Whitaker, 261 F.3d at 209) (cleaned up). "The situs of the injury for the purpose of section 302(a)(3)(ii) 'is the place where the underlying, original event occurred which caused the injury . . . not the location where the resultant damages are felt by the plaintiff.'" Id. (quoting M & M Packaging, Inc. v. Kole, 298 F. App'x 39, 42 (2d Cir. 2008)) (cleaned up).

Here, Plaintiff's alleged injuries occurred in the Casino in New Jersey where he was subjected to the Casino's practices concerning "cash-out tickets" and, as a result of those practices, decided not to redeem (or attempt to redeem) those cash-out tickets for coins due to the "time, inconvenience, and obstacles to redeeming them." (Compl. ¶ 34.) The fact that Plaintiff's monetary losses in New Jersey allegedly impacted his "standard of living and quality of life" when he returned to New York is insufficient. (Pl. Opp'n Mem. at 5.) Plaintiff does not cite a single case suggesting otherwise. Courts have repeatedly found § 302(a)(3) inapplicable to analogous cases where New York residents are physically injured in other states even though the physical injuries continued to affect the plaintiffs after they returned to New York. See Machado v. Hershey Ent. & Resorts Co., No. 21-CV-6434, 2023 WL 1967531, at *6 (E.D.N.Y. Feb. 13, 2023 ("[T]he original events that allegedly caused Plaintiffs' injuries – namely, [defendant amusement park's] negligence and [defendant hospital's] nontreatment of [plaintiff's] injuries – as well as the 'first effects' of those events both undisputedly occurred in Pennsylvania, not New York. These facts, by themselves, preclude this Court from exercising specific jurisdiction over Defendants pursuant

8

to Section 302(a)(3)(i).") (cleaned up); Muraco, 2015 WL 9462103, at *4 ("Plaintiff's foot was injured by the falling mirror at the Resort in St. Lucia, thus the situs of the injury is St. Lucia. Under section 302(a)(3), the fact that Plaintiff is a New York resident and continued to suffer pain in New York as a result of the injury is not relevant."); Rodriguez v. Circus Circus Casinos, Inc., No. 00-CV-6559, 2001 WL 21244, at *2 (S.D.N.Y. Jan. 9, 2001) ("Although the full extent of Rodriguez's injuries only became evident once the he had returned to New York, any injuries he suffered were effected in Las Vegas. Damages suffered within New York do not furnish the predicate injury for long-arm jurisdiction under C.P.L.R. 302(a)(3).") Plaintiff's injury did not occur in New York; thus, jurisdiction cannot be premised on § 302(a)(3)(ii).

Finally, Plaintiff's Complaint alleges that he was in New York when he became aware that Defendant's "practices . . . were deceptive, unlawful and/or unfair." (Compl. ¶ 27.) Plaintiff's brief, however, does not argue that this allegation is sufficient to establish jurisdiction under § 302(a)(3)(ii) or § 302(a)(1). Accordingly, Plaintiff has waived any arguments based on this allegation. Moreover, this allegation is patently insufficient to establish jurisdiction under either § 302(a)(3) or § 302(a)(1).

For the reasons set forth above, Plaintiff has not established that this Court has personal jurisdiction over Defendant.

**B. Venue**

Even if Plaintiff could somehow establish personal jurisdiction, venue is improper in this District. Plaintiff contends that venue is proper here because, according to Plaintiff, "a substantial part of the events or omissions giving rise to the claim occurred" in this District, 28 U.S.C. § 1391. The Court disagrees. See Machado, 2023 WL 1967531, at *6. Plaintiff's allegation that he was back in New York when he learned that Defendant's practice was unlawful is insufficient to

9

establish that "a substantial part of the events or omissions giving rise to the claim occurred" in this District. Plaintiff does not cite any authority suggesting otherwise.

## C. Transfer to the District of New Jersey is Appropriate

Once a court determines that it lacks personal jurisdiction over the defendant or that venue is improper, the court may either dismiss the action or transfer it to a district in which the action could have been brought. See 28 U.S.C. § 1406(a); Machado, 2023 WL 1967531, at *6–7. Defendant admits that this action could have originally been brought in the District of New Jersey, and Plaintiff does dispute that point. The Court exercises its discretion to transfer this action to the District of New Jersey.

## III. CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion to transfer venue to the District of New Jersey.

**SO ORDERED.**

Dated: March 22, 2024
       Central Islip, New York

(/s/ JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

10